**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN T. SMINK,** | : | **Civil No. 3:13-CV-784** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN COLVIN, ACTING** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The plaintiff appeals from an adverse decision denying his claim for disability insurance benefits. This application was denied after a November 8, 2011, hearing before an Administrative Law Judge (ALJ), (Tr. 27-58), in a written decision dated November 18, 2011. (Tr. 64-71) The record of these social security proceedings reveals that Smink applied for disability insurance benefits (DIB) in June 2010, alleging an onset of disability beginning on March 6, 2010, when the plaintiff suffered severe, crushing leg and foot injuries in an automobile accident.

At the time of this accident, Mr. Smink was fifty-two years old, (Tr. 31) and had an extensive prior employment history marked by decades of steady employment in physically demanding fields of work. (Tr.128-135) Indeed, at the time of his injuries, Smink had been employed for seven years as a cabinetmaker. (Id.) Following this accident, Mr. Smink was laid off from his cabinetry job but took the initial to try to find other employment, enrolling in courses to become a pharmaceutical technician. (Tr. 40-41, 516, 575)

The March 6, 2010, accident which led to this disability application undeniably resulted in severe, bilateral, leg injuries for Smink. Thus, it is undisputed that Smink sustained fractures of both the left hip and right mid-foot, requiring surgery and insertion of a vena cava filter. (Tr. 176-79, 195 218) Smink was hospitalized for 10 days with these injuries, and was then discharged to a rehabilitation facility, and later to an assisted living facility, spending three months in these facilities before he was physically well enough to return home on June 16, 2010. (Tr. 441)

During this extended period of his convalescence from these severe injuries, Smink was under the care of an orthopedist, Dr. James C. Widmaier, Jr., M.D. On August 26, 2010, Dr. Widmaier, Jr., provided a detailed report regarding Smink's injuries, condition, and the extent to which these injuries were disabling, stating that:

I am currently taking care of and following Mr. John T. Smink, birthdate, May 28, 1957, for his injuries that he sustained in a motor vehicle accident March 6, 2010. He has a left acetabular [hip] fracture as well as a right Lisfranc [mid-foot] fracture, both of which required surgical intervention. He is doing quite well from recovery from these and is starting to weight bear and gain strength. I most recently saw him in clinic on June 16,2010. He still required prescription pain medications. It is quite possible that he will require hardware removal from his right foot, as this is a standard procedure for treatment of a Lisfranc injury. *He is still disabled and I would not expect this gentleman to be back to work any sooner than probably at least one year from his accident. Again, we noted that we will be seeing him on again on September 13 and probably again in another interval 3-4 months after that but this gentleman is currently disabled for working.*

(Tr. 455)(emphasis added.)

Two months later, in October 2010, the findings of Smink's treating physician that the plaintiff was currently disabled were confirmed by an independent examination conducted at the request of the agency. Specifically, on October 13, 2010, Raymond Kraynak, D.O., examined Smink at the request of the agency (Tr. 458-60) In the course of this examination Dr. Kraynak reviewed the details of Smink's accident, assessed the severity of his injuries, noted that Smink continued to have difficulty ambulating, observed that Smink needed to use a cane or crutch, and found that Smink had limited driving ability and had to stop walking after a half a block due to pain. (Tr. 458) Dr. Kraynak then completed a "Medical Source Statement of Claimant's Ability To Perform Work-Related Physical Activity" form,

stating that Smink's physical limitations were inconsistent with the ability to work on a full-time basis, since Smink could not sit, stand or walk for a full work day without debilitating pain. (Tr. 465-66)

In the face of this medical evidence, which consistently supported a finding of disability for Smink, one thin reed of countervailing medical evidence was developed by the Commissioner. On November 5, 2010, Louis Tedesco, M.D., a state agency physician who, unlike Drs. Kraynak and Widmaier never examined or treated Smink, reviewed Smink's medical records. On the basis of this sterile records review, Dr. Tedesco projected that, as of March 6, 2011, one year from the date of his accident, Smink would be able to perform light exertional work that never required kneeling, crouching, crawling or climbing ropes or scaffolding; occasionally requires climbing ramps, stairs, or ladders; and frequently required balancing and stooping. (Tr. 469-75)

Subsequent events, and the on-going medical assessment of Smink's progress by his treating physician Dr. Widmaier, significantly undercut Dr. Tedesco's speculative opinion. Thus, on April 15, 2011, Dr. Widmaier provided a detailed follow-up narrative report regarding Smink's condition which confirmed his on-going disability, stating as follows:

I am responding to . . . questions . . . on Mr. John Thomas Smink, whose birthdate is May 28, 1957. My last time seeing Mr. Smink was on February 4,2011, which was his follow-up after removal of the hardware from his right foot that was done on January 18, 2011. He had a previous Lisfranc fracture dislocation as well as a left acetabular fracture from the automobile accident. He was employed at Wood-Mode prior to his accident. I understand quite well that he had a job that required him to stand on this feet pretty much most of the day with exception of break. I feel that his disability will last at least twelve consecutive months from the time of accident in which was March 6, 2010, and at this point he still, even after this February visit, certainly is going to have difficulty with type of work given the nature of his two injuries. A Lisfranc injury itself can be completely disabling for someone that does manual type standing labor. *So therefore, I 100% agree that he will have disability for at least twelve consecutive months and may even consider once he gets to the point where he thinks he is good physically as he can get obtaining a functional capacity exam to see objectively if this type of employment is not going to be within his best interests.* Certainly, he is sharp of mind and can certainly perform tasks from a seated position that would require thinking and dexterity of hands. We had scheduled him to follow-up with us in approximately a year's time from this February visit to check on his left hip.

(Tr. 481-482)(emphasis added.)

Therefore, as of April 2011, Mr. Smink's treating physician was reporting that Smink had undergone additional surgery to remove hardware from his foot in January 2011, and opined that the plaintiff remained wholly disabled. This conclusion was later confirmed on December 29, 2011, when Robert W. Mauthe, M.D., a board certified physiatrist and medical examiner reviewed plaintiff's medical records at the request of plaintiff's attorney. (Tr. 605-607) Dr. Mauthe stated that his medical

record review revealed that Smink suffered from a left acetabular fracture, status-post

(S/P) open-reduction with internal fixation (ORIF); right foot Lisfranc fracture S/P

ORIF; and history of deep vein thrombosis (DVT), S/P filter placement and removal.

(Tr. 607)  Like Drs. Widmaier and Kraynak, Dr. Mauthe also found that Smink was

not capable of any form of gainful employment due to severe pain that prevented him

from ambulating effectively on a sustained basis and medications that interfered with

his ability to function.  (Tr. 607)[1]

On November 8, 2011, an Administrative Lw Judge (ALJ) conducted a hearing

on Smink's disabilty claim.  (Tr. 27-58)  In the course of this hearing, Smink

appeared and testified consistent with the medical findings of Drs. Kraynak and

Widmaier, explaining that he had suffered a crushing foot and leg injury which

limited his ability to walk more than short distances without pain.  (Id.)  Smink also

described in detail the foot swelling he experienced; and the debilitating effects of his

painkilling medication.  (Id.)  Further, Smink clarified one question raised by the ALJ

regarding his level of daily activities, explaining that while he could occasionally

engage in the sedentary activity of fishing, he was unable to hunt due to the persistent

debilitating effects of his leg injuries.  (Id.)  In this regard, Smink's November 2011

---

[1]We note that this opinion, which is included in the record of these
proceedings, was obtained after the ALJ decision, but before the Appeals Council
review of that decision.

testimony was completely consistent with his July 2010 disability report which also stated that he could no longer hunt due to the pain caused by these leg injuries. (Tr. 139-151)

Ten days after this hearing, on November 18, 2011, the ALJ issued an opinion denying Smink's disability claim. (Tr. 64-71) In this decision, the ALJ rejected the opinions of Drs. Widmaier and Kraynak, both of whom had actually treated or examined Smink, and both of whom had concluded in carefully documented opinions that Smink was disabled. (Id.) Instead, the ALJ chose to given greater weight to the judgment of Dr. Tedesco, a judgment which was not based upon any clinical examination of Smink but only rested on a November 2010 medical record review, and opined that Smink could return to work in March 2011. (Id.) The ALJ then incorporated the residual functional capacity estimated by Dr. Tedesco in November 2010, a functional capacity which was refuted by the opinions of Smink's treating and examining doctors, when formulating a hypothetical question for the vocational expert, who found that Smink could perform work in the national economy if Dr. Tedesco's 2010 estimate accurately described the plaintiff's medical limitations. (Id.) The ALJ relied upon this vocational expert opinion, in turn, to conclude that jobs existed in the national economy which Smink could fill.

Following this adverse ruling, Smink's counsel obtained additional evidence in the form of a December 2011 evaluation of the plaintiff by Dr. Mauthe. That evaluation used the precise methodology employed by Dr. Tedesco, a medical records review, but had the benefit of a more complete and timely body of medical records. On the basis of this review, Dr. Mauthe agreed with the conclusions of Smink's treating and examining physicians and found Smink to be disabled. (Tr. 607)

After exhausting his administrative appeals, Smink filed this civil action seeking judicial review of the ALJ's disability determination. (Doc. 1) The parties have fully briefed this matter, (Docs. 9 and 10), and this case is now ripe for resolution. For the reasons set forth below, we find that the ALJ's findings in this case were not adequately explained on the record. Therefore, it is recommended that this appeal be remanded for further consideration of this evidence.

## II.   Discussion

### A.   Standards of Review–The Roles of the Administrative Law Judge and This Court

#### 1.   Initial Burdens of Proof , Persuasion and Articulation for the ALJ

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court. At the outset, it is the responsibility of the ALJ in the first

instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A)

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not

proceed any further.  See 20 C.F.R. § 404.1520.  As part of this analysis the ALJ must sequentially determine:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  See 20 C.F.R. § 404.1520

This disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642 F.2d

700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## 2. Guidelines for Assessment of the Disabling Effect of Pain

Moreover, where a disability determination turns on an assessment of the level of a claimant's pain, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead. at the outset, by statute the ALJ is admonished that an "individual's

statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A)

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b) Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b) In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. §

404.1529(b) Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p

## 3.  Legal Benchmarks for Assessing Treating Physician Opinions

Further, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)  This principle applies with particular force to the testimony of a treating physician, testimony that is to be accorded great weight by the ALJ.  In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones.  In Morales v. Apfel, 225 F.3d 310  (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting  Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  See Adorno, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on

the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. <u>Plummer</u>, 186 F.3d at 429; <u>Frankenfield v. Bowen</u>, 861 F.2d 405, 408 (3d Cir.1988); <u>Kent</u>, 710 F.2d at 115.

<u>Id.</u> at 317-318.

Furthermore, when assessing competing views of treating and non-treating physicians, the ALJ and this court are cautioned that:

> [A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence. <u>Ferguson</u>, 765 F.2d at 37 (1985). When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. <u>See</u> <u>Stewart v. Secretary of H.E.W.,</u> 714 F.2d 287, 290 (3d Cir.1983). Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." <u>Rocco v. Heckler</u>, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.) An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. <u>Newhouse v. Heckler</u>, 753 F.2d 283, 286 (3d Cir.1985).

<u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir.1999).

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2) When the opinion of a physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. § 416.927(d)(2)(I)

Additionally, the nature and extent of the doctor-patient relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 416.927(d)(2)(ii)

Given this recognition of the great weight that should attach to the professional judgment of treating physicians, it is axiomatic that an ALJ must provide an adequate explanation for any decision which chooses to disregard a treating physician's findings regarding illness, impairment and disability. Moreover, when an ALJ fails to adequately explain why a treating physician's medical assessment has been discounted, a remand for further development of the factual record is proper. See e.g., Burnett v. Commissioner of Social Security, 220 F.3d 112, 119 (3d Cir. 2000)(failure to adequately discuss compering medical evidence compels remand of ALJ decision); Shaudeck v. Commissioner of Social Security, 181 F.3d 429 (3d Cir. 1999); Allen v. Brown, 881 F.2d 37, 40-41 (3d Cir. 1989); Belotserkovskaya v. Barnhart, 342 F.Supp.2d 335 (E.D. Pa. 2004). Thus, as one court has aptly observed:

> "An ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir.1993) (internal quotation marks, citations and indication of alteration omitted). Where the findings are those of a treating physician, the Third Circuit has "long accepted" the proposition that those findings "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." Id. (citations omitted) An ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, see Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988), and may afford a medical opinion more or less weight depending upon the extent to which supporting explanations are provided, see Mason, 994 F.2d at

1065 ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"), and whether the reporting doctor is a specialist, see Id. at 1067. An ALJ may not, however, reject medical determinations by substituting his own medical judgments. See Frankenfield, 861 F.2d at 408.

Terwilliger v. Chater, 945 F.Supp. 836, 842-3 (E.D.Pa.1996).

### 4.    Other Procedural and Substantive Requisites for an ALJ Ruling–Proper Hypothetical Questions for Vocational Experts

Furthermore, since one of the principal contested issues in this setting relates to the claimant's residual capacity for work in the national economy, an ALJ must exercise care when formulating proper hypothetical questions to vocational experts who opine on the availability of work for a particular claimant. In this regard, the controlling legal standards are clear, and clearly defined. As the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny, 745 F.2d at 218. A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added). Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. Podedworny, 745 F.2d

at 218 (citing <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1155 (3d Cir.1983)).

<u>Burns v. Barnhart</u>, 312 F.3d 113, 123 (3d Cir. 2002).

The formulation of a proper hypothetical question has a dual significance in social security proceedings. First, as an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ finding. <u>Burns v. Barnhart</u>, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.") However, more fundamentally, an erroneous or inadequate hypothetical question undermines the reliability of any residual function capacity determination since " objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 n. 8 (3d Cir. 2005).

## 5. <u>Judicial Review of ALJ Determinations–Standard of Review</u>

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of

Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also Pierce v. Underwood, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971) Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

### 6.  **Judicial Review-New Evidence**

Finally, in a case such as this, where the record reveals that there was new and additional evidence developed by a claimant following the ALJ hearing, several other legal considerations come into play.  42 U.S.C. § 405(g) provides that:  "The court may, . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  Thus, we are empowered by statute to direct a remand to consider new and material evidence.  In making this determination, however, "the materiality standard of § 405(g) requires 'that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination.'  Id.  See also Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1381 (9th Cir.1984); Dorsey v. Heckler, 702 F.2d 597, 604–05 (5th Cir.1983); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir.1981).  Thus, to secure remand, a claimant must show that new evidence raises a 'reasonable possibility' of reversal sufficient to undermine confidence in the prior decision.  The burden of such a showing is not great.  A 'reasonable possibility,' while requiring more than a minimal showing, need not meet a preponderance test.  Instead, it is adequate if the new evidence is material and there is a reasonable possibility that it is sufficient to

warrant a different outcome." Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985). In practice, "[f]our factors must be considered pursuant to this requirement. See, e.g., Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir.1985). First, the evidence must be new and not merely cumulative of what is already in the record. Id. at 287. Second, the evidence must be material, relevant and probative. Id. Third, there must exist a reasonable probability that the new evidence would have caused the Commissioner to reach a different conclusion. Id. Fourth, the claimant must show good cause as to why the evidence was not incorporated into the earlier administrative record. Id." Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 472 (3d Cir. 2005).

## B. The ALJ's Decision Relied Upon a Flawed Hypothetical and Did Not Adequately Address the Medical Evidence

Judged against these legal guideposts, we find in this case that the ALJ's treatment of the evidence developed in this matter was flawed in a number of ways which compel a remand of this case for further proceedings.

First, we find that the ALJ erred in discounting the treating and examining care-givers' opinions that Smink was disabled. These opinions were consistent, comprehensive, and were based upon independent assessments of Smink conducted by three different doctors over the span of 18 months. These medical opinions were

also supported by substantial other clinical medical evidence, which revealed an on-going need for pain killing medication by Smink, disclosed that Smink was compelled to undergo months of initial convalescence between March and June of 2010, and revealed that Smink had subsequent surgery in January 2011 to remove hardware from his crushed right foot.

Thus, the opinions of these treating and examining doctors were precisely the type of medical evidence which should receive great weight, since they reflected the consensus professional judgment of those treating and examining physicians who had the greatest experience caring for the plaintiff. 20 C.F.R. § 416.927(d)(2) Acknowledging that an ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time," Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)), we find that the ALJ's decision to reject these collective treating and examining physician medical judgments was not sufficiently supported or explained on the record in this case.

At the outset, we cannot conclude that Dr. Tedesco's November 2010, prediction that Smink could return to the workplace by March 2011 constituted the type of "substantial evidence" justifying the ALJ's decision to reject treating

physician judgments. Indeed, at the time that opinion was given by Dr. Tedesco in November 2010, this prediction, based solely on a record review, was at best a thin reed when compared against the detailed disability findings made by Smink's treating and examining physicians, Drs. Widmaier and Kraynak, both of whom found Smink to be disabled in 2010. Moreover, whatever modest evidentiary value Dr. Tedesco's November 2010 prediction regarding Smink's ability to work in March 2011 initially possessed was substantially undermined by April of 2011, when Smink's treating physician unequivocally stated that: "I 100% agree that he [Smink] will have disability for at least twelve consecutive months." (Tr. 481-482)

The evidentiary value of this prediction was further undermined by the new evidence submitted by plaintiff's counsel in December 2011, the report of Dr. Mauthe. Dr. Mauthe's report used the precise methodology which the ALJ deemed persuasive when employed by Dr. Tedesco–a medical record review. However, Dr. Mauthe's report relied upon a more comprehensive body of medical evidence, spanning from March 2010 through the Fall of 2011. Furthermore, Dr. Mauthe's report was contemporaneous with the ALJ's decision, in stark contrast to Dr. Tedesco's report, which was written one year prior to the ALJ hearing and decision. Using this medical record review methodology, and drawing upon a greater and more

timely body of medical evidence, Dr. Mauthe agreed with Drs. Kraynak and Widmaier that Smink was disabled.

Recognizing that a remand for consideration of new evidence is appropriate "if the new evidence is material and there is a reasonable possibility that it is sufficient to warrant a different outcome," Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985), we find that the presence of this new evidence also warrants remand. In our view this evidence is material, since it constitutes the most timely and comprehensive medical records assessment of Smink's condition. Further, the new evidence is not merely cumulative. Rather, it is strongly corroborative of the findings of Drs. Widmaier and Kraynak, and casts grave doubt upon the conclusions reached by Dr. Tedesco. In addition, we conclude that "good cause" may exist here for the untimely submission of this report, since plaintiff's counsel may not have identified the need for such corroborative proof until after the ALJ's decision which chose the year-old views of a non-examining and non-treating expert witness over the opinions of Smink's treating and examining doctors.

Finally, we conclude that the ALJ's efforts to bolster this opinion that the plaintiff was not disabled by citing Smink's alleged involvement in strenuous outdoor activities like hunting, rests on an incomplete assessment of the factual record. That record, fairly construed, seems to indicate that Smink reported an inability to engage

in hunting after the accident, and did not support a conclusion that Smink acknowledged successfully undertaking these strenuous activities.

We also find that this incomplete characterization of Smink's residual functional capacity appears to have also infected the ALJ's hypothetical question to the vocational expert, since at Smink's disability hearing the ALJ propounded a hypothetical question to the vocational expert relating to available work in the national economy which was expressly premised on Dr. Tedesco's estimated assessment of Smink's capabilities, rather than the medically-determined limitations documented by Drs. Widmaier and Kraynak. This hypothetical question seems flawed, to the extent that it improperly discounted the findings of Smink's treating and examining care-givers. We recognize that: "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny, 745 F.2d at 218. Thus, a hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added), and, where medical evidence of specific impairments is not accurately included in a hypothetical question to a vocational expert, the expert's response

simply cannot be not considered substantial evidence supporting an ALJ's ultimate findings. Podedworny, 745 F.2d at 218 (citing Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1155 (3d Cir.1983)). Judged against these benchmarks, the hypothetical question posed in this case by the ALJ appears to rest on both a flawed factual premise and an incomplete factual record. Therefore, a remand is necessary to address this issue on a complete, and completely accurate, record.

Given the flaws inherent in the ALJ's treatment of the medical evidence, the presence of material new medical evidence, and in the ALJ's reliance upon an vocational expert opinion based upon a flawed hypothetical question posed to that expert, we further find that this evidence is insufficient to allow us to conclude that "substantial evidence" supports the ALJ's decision to reject these treating and examining medical opinions. In sum, in this case, we find that the ALJ's analysis relied upon a flawed vocational expert hypothetical, failed to adequately address the treating physician medical evidence and did not consider material new evidence which supported a disability finding. Because the ALJ's decision is not adequately explained or supported in the record before us, we recommend that the case be remanded in order for the ALJ to re-assess this evidence.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be REMANDED for further consideration of the medical evidence.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of November 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge